UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>- against -<br><br>COLINFORD MATTIS and UROOJ RAHMAN,<br><br>*Defendants*. | 20-cr-203 (BMC) |


**DEFENDANT COLINFORD MATTIS'S MOTION**

**TO DISMISS COUNTS ONE THROUGH FIVE OF THE INDICTMENT**

Sabrina P. Shroff
80 Broad Street
19th Floor
New York, New York 10004
Tel: (646) 763 1490

*Attorney for Colinford Mattis*

To:     Jacquelyn Kasulis
        United States Attorney
        Eastern District of New York
        271 Cadman Plaza East
        Brooklyn, New York 11201

        Attn: Ian Richardon
              Jonathan Algor
              Assistant United States Attorney

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................... 1

FACTUAL BACKGROUND ................................................................................................. 3

ARGUMENT .......................................................................................................................... 3

    A.    THE APPLICATION OF SECTION 844(F) TO THE ALLEGATIONS HERE EXCEEDS CONGRESS'S POWER UNDER THE CONSTITUTION'S PROPERTY CLAUSE. ........................... 4

    B.    THE INDICTMENT CANNOT SUPPORT A CONVICTION UNDER SECTION 844(I) BECAUSE THE NYPD AUXILIARY DIVISION VEHICLE IS NOT USED IN INTERSTATE COMMERCE. ........ 7

    C.    THE COURT MUST DISMISS THE SECTION 844(H) CHARGE BECAUSE A VIOLATION OF SECTION 844(H) CANNOT BE PREDICATED ON AN ARSON OFFENSE. ................................. 10

    D.    SECTION 844(F) CANNOT SERVE AS A PREDICATE OFFENSE TO TRIGGER SECTION 924(C) BECAUSE IT IS NOT A CRIME OF VIOLENCE. ......................................................... 11

        1.    Section 844(f) is not a crime of violence because that statute only requires a mens rea of recklessness. ............................................................................................ 12

        2.    Section 844(f) is not a crime of violence because it can be violated by destroying one's own property. ............................................................................................ 14

CONCLUSION ....................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*1981 N.Y. Op. Atty. Gen. 24*,
    1981 WL 145797 (1981)...........................................................................................8

*Belflower v. United States*,
    129 F.3d 1459 (11th Cir. 1997) .............................................................................9

*Bolen v. United States*,
    --- F. Supp. 3d ---, 2021 WL 1700340 (D. Idaho Apr. 29, 2021) .....................................14, 15

*Borden v. United States*,
    141 S.Ct. 1817 (2021).............................................................................1, 3, 11, 12

*Jones v. United States*,
    529 U.S. 848 (2000)...................................................................................1, 6, 9

*McNaught v. United States*,
    646 F. Supp. 2d 372 (S.D.N.Y. 2009)....................................................................13

*Miqui v. City of New York*,
    No. 01-CV-4628 (FB), 2003 WL 22937690 (E.D.N.Y. Dec. 5, 2003) ....................................9

*People v. Luciani*,
    466 N.Y.S.2d 638 (Sup. Ct. 1983)........................................................................8

*Rudolph v. United States*,
    No. 20-CV-8024 (CLS), 2021 WL 3212804 (N.D. Ala. July 29, 2021) ...............................14

*Russell v. United States,*
    471 U.S. 858 (1985) .........................................................................................4

*United States v. Barton*,
    647 F.2d 224 (2d Cir. 1981)..................................................................................8

*United States v. Cheese*,
    No. 18-CR-33-2 (NGG), 2020 WL 705217 (E.D.N.Y. Feb. 12, 2020) .............................4, 11

*United States v. Davis*,
    139 S. Ct. 2319 (2019)......................................................................................13

*United States v. Hersom*,
    588 F.3d 60 (1st Cir. 2009).............................................................................2, 5, 6

*United States v. Iodice*,
    525 F.3d 179 (2d Cir. 2008)............................................................................10

*United States v. Johnson*,
    227 F. Supp. 3d 1078 (N.D. Cal. 2016) .......................................................13

*United States v. Koen*,
    982 F.2d 1101 (7th Cir. 1992) .......................................................................15

*United States v. Konopka*,
    409 F.3d 837 (7th Cir. 2005) .........................................................................10

*United States v. LaPorta*,
    46 F.3d 152 (2d Cir. 1994)....................................................................1, 2, 10

*United States v. McGuire*,
    178 F.3d 203 (3d Cir. 1999)............................................................................8

*United States v. Mennuti*,
    639 F.2d 107 (2d Cir. 1981)....................................................................1, 4, 9

*United States v. Pirro*,
    212 F.3d 86 (2d Cir. 2000)..............................................................................3

*United States v. Salas*,
    889 F.3d 681 (10th Cir. 2018) .......................................................................15

*United States v. Sicurella*,
    834 F. Supp. 621 (W.D.N.Y. 1993) ..............................................................11

*United States v. Sweatt*,
    No. 05-CR-230 (DKC), 2021 WL 3022695 (D. Md. July 16, 2021).....................14

*United States v. Tsarnaev*,
    968 F.3d 24 (1st Cir. 2020)............................................................................13

*United States v. Vrancea*,
    No. 12-CR-198 (WFK) (E.D.N.Y. Dec. 31, 2012), ECF No. 49...........................13

*United States v. Wiktor*,
    146 F.3d 815 (10th Cir. 1998) .......................................................................13

**Statutes**

18 U.S.C. § 2.........................................................................................................3

18 U.S.C. § 231 .....................................................................................................3

18 U.S.C. § 844......................................................................................10, 11, 13

18 U.S.C. § 844(i) ............................................................................ *passim*

18 U.S.C. § 844(f) ........................................................................... *passim*

18 U.S.C. § 844(f)(1) ...............................................................................5

18 U.S.C. § 844(h) .................................................................1, 2, 10, 11

18 U.S.C. § 844(h)(1) ......................................................................2, 10

18 U.S.C. § 924(c) ......................................................................... *passim*

18 U.S.C. § 924(c)(1)(B)(ii) .................................................................11

18 U.S.C. § 924(c)(3)(A) ................................................................13, 14

18 U.S.C. § 924(c)(3)(B) .......................................................................13

18 U.S.C. § 924(e) .................................................................................12

18 U.S.C. § 5861 .....................................................................................3

28 U.S.C. 2255 .......................................................................................9

**Other Authorities**

148 Cong. Rec. S11394 §1125 (2002) ....................................................9

H.R. Rep. No. 91-1549 (1970) ...............................................................5

N.Y. City Council, *Schedules A and B to the Fiscal Year 2013 Expense and Contract Budget Resolutions* 25 ......................................................7

N.Y. Police Dep't, *Hearing on the Fiscal Year 2013 Executive Budget* 9 (2012) .........................7

N.Y. State Homeland Security Program, *FY 2013 Local Sub-Grantee Program Guidance* 11 ..............................................................7

U.S. Const. Art. IV, § 3, cl. 2 .................................................................5

**INTRODUCTION**

In an unprecedented effort, the government seeks to transform the "paradigmatic common-law state crime" of arson, *Jones v. United States*, 529 U.S. 848, 858 (2000), into a federal criminal offense. The government lacks the jurisdictional hook to do so. By charging Colinford Mattis in a seven-count indictment, for which he would face a mandatory minimum term of forty-five years in prison if convicted, the government stretches the reach of federal criminal law beyond its constitutional bounds. As Judge Friendly explained, "Congress did not choose . . . to make nearly every bombing in the country a federal offense." *United States v. Mennuti*, 639 F.2d 107, 113 (2d Cir. 1981). Congress certainly did not choose to make this alleged bombing a federal offense. This case involves the attempted arson of an NYPD Auxiliary Division vehicle in which the federal government has no financial interest — as the vehicle was purchased using only New York City funds — and in which the vehicle serves no role in interstate commerce — as auxiliary police officers are unpaid volunteers who have no arrest powers beyond that of private citizens. Because the federal government cannot exert federal jurisdiction over an offense in which it lacks interest, the Court should dismiss the arson counts of the indictment.

The government's efforts to extend the harsh mandatory minimum penalties of 18 U.S.C. §§ 924(c) and 844(h) are also unprecedented and contrary to recent Supreme Court precedent and binding Second Circuit law. First, the Supreme Court's recent decision in *Borden v. United States*, 141 S.Ct. 1817 (2021) conclusively precludes the application of the harsh § 924(c) enhancement to predicate crimes that can be committed with a *mens rea* of recklessness. The predicate offense here, § 844(f), is just such an offense. *Borden* requires the Court to dismiss the § 924(c) count. Moreover, binding Second Circuit precedent requires dismissal of the § 844(h) count, because that

enhancement, which carries a ten-year mandatory minimum sentence, cannot be predicated on another arson offense. *See United States v. LaPorta*, 46 F.3d 152 (2d Cir. 1994).

Accordingly, this motion seeks the dismissal of counts one through five of the indictment. *First*, dismissal of count one — damaging property of an organization receiving federal financial assistance, a violation of 18 U.S.C. § 844(f) — is warranted because extending that statute to the allegations here exceeds Congress's constitutional authority. Congress's Property Clause powers do not support extending federal criminal jurisdiction to the arson of an NYPD vehicle with no connection to federal financial assistance. Because the indictment only alleges that the NYPD owned the vehicle at issue, and not that federal financial assistance had any connection to the vehicle, the indictment oversteps the bounds of the Property Clause. Accordingly, the Court should dismiss count one.

*Second*, dismissal of counts two and four — arson of property used in interstate commerce and conspiracy to commit the same — is warranted because the vehicle at issue here, an NYPD Auxiliary Division car, was not used in interstate commerce. The NYPD's Auxiliary Division had been suspended two months prior to the allegations here, and when the Division was active, it served as an entirely volunteer force with no arrest authorities beyond those of an ordinary civilian. To find a nexus to interstate commerce here would be to "transform a broad swathe of 'traditionally local criminal conduct' into a 'matter for federal enforcement.'" *United States v. Hersom*, 588 F.3d 60, 67 (1st Cir. 2009) (quoting *Jones*, 529 U.S. at 858).

*Third*, dismissal of count three — using an explosive during the commission of a felony, a violation of 18 U.S.C. § 844(h) — is warranted because the predicate felonies charged here, §§ 844(f) and 844(i), are themselves the use of an explosive. The government cannot charge a § 844(h) offense with other arson offenses as predicates. *See LaPorta*, 46 F.3d at 157 (holding that

the government "must proceed" only under § 844(f), and not under § 844(h)(1), where the predicate felony for § 844(h)(1) is the destruction of government property).

*Fourth*, dismissal of count five — using a destructive device during and in relation to a crime of violence, a violation of 18 U.S.C. § 924(c) — is warranted because the predicate felony charged here, § 844(f) (which should be dismissed in any event), is not a crime of violence. Because a person can be convicted of § 844(f) with a recklessness *mens rea*, it is not categorically a crime of violence. *See Borden*, 141 S.Ct. at 1822. Separately, because a § 844(f) conviction can rest on the destruction of one's own property, it is not a crime of violence against the "property of *another*."

For the reasons below, the Court should dismiss Counts One through Five of the indictment, permitting the government to proceed only on count six (civil disorder in violation of 18 U.S.C. § 231) and count seven (possessing and making a destructive device in violation of 18 U.S.C. § 5861).

## FACTUAL BACKGROUND

The complaint alleged that, on May 30, 2020, Mr. Mattis violated 18 U.S.C. §§ 2 and 844(i) by aiding and abetting Urooj Rahman, who allegedly tossed an "incendiary device, comprised of a bottle containing an incendiary chemical (sometimes referred to as a 'Molotov cocktail' device)" into an empty NYPD vehicle in Brooklyn "through a previously broken window, which set fire to the console." Doc. No. 1 at 2–3. Mr. Mattis is alleged to have driven a minivan that carried Ms. Rahman and items that could be used to make a Molotov cocktail. *Id.* at 3. On June 11, the government obtained a seven-count indictment from a grand jury on Long Island. Doc. No. 21.

## ARGUMENT

Although ordinarily courts uphold indictments "that do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged

crime," *United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000), courts can — indeed, must — dismiss legally infirm counts in certain circumstances present here. Dismissal of a § 924(c) count is warranted at this stage where a court, applying the categorical approach, concludes that the predicate crime is not a "crime of violence." *See, e.g.*, *United States v. Cheese*, No. 18-CR-33-2 (NGG), 2020 WL 705217 (E.D.N.Y. Feb. 12, 2020). And courts in this circuit dismiss counts, such as the arson counts charged here, that suffer from jurisdictional defects. *See, e.g.*, *Mennuti*, 639 F.2d at 109. Because Counts One, Two, Three, Four, and Five are legally insufficient, the Court should enter an order dismissing them.

A. *The application of Section 844(f) to the allegations here exceeds Congress's power under the Constitution's Property Clause.*

Count one of the indictment alleges that Mr. Mattis violated 18 U.S.C. § 844(f) by setting fire to an NYPD Auxiliary Division vehicle owned by "an institution and organization receiving Federal financial assistance." The indictment supplies no additional allegations about the NYPD Auxiliary Division vehicle, only that the car is property of the NYPD, and that the NYPD receives some Federal financial assistance. Without more, however, the indictment is defective because the Constitution's Property Clause does not permit Congress to extend federal criminal law to the destruction of any property of any organization receiving some Federal financial assistance. Where the indictment cannot sustain the jurisdictional element of an arson offense, the Court should dismiss those counts. *See Mennuti*, 639 F.2d at 109 (Friendly, J.) (affirming dismissal of § 844(i) count on the grounds that "the destruction of two private dwellings would not constitute the destruction of buildings used in interstate or foreign commerce"), *superseded on other grounds by Russell v. United States*, 471 U.S. 858 (1985).

The Court should dismiss this count because § 844(f) is an unconstitutional exercise of Congress's Property Clause power to the extent that it criminalizes destruction of any and all

property of an organization receiving "Federal financial assistance." As the First Circuit concluded in a comprehensive opinion, "in the case of organizations receiving federal financial assistance related to specific property, we construe section 844(f) as limited in general to arson of *that particular property*." *Hersom*, 588 F.3d at 67 (emphasis added). That is, where Federal financial assistance to an organization whose property has been destroyed is the jurisdictional hook to apply § 844(f), the statute is "limited to arson of property acquired, renovated, or leased using federal financial assistance." *Id.* at 66. The government does not allege that the NYPD vehicle destroyed here was acquired, renovated, or leased using federal financial assistance. Indeed, it would be impossible to do so, as public records reveal that NYPD vehicles are not acquired, renovated, or leased using any federal financial assistance whatsoever.

The Constitution's Property Clause grants Congress the power "to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States." U.S. Const. art. IV, § 3, cl. 2. Pursuant to that Clause, Congress promulgated § 844(f) in 1970, making it a federal crime to maliciously damage or destroy, or to attempt to damage or destroy, "by means of fire or an explosive, any building, vehicle, or other personal or real property in whole or in part owned or possessed by, or leased to, the United States, or any department or agency thereof, or any institution or organization receiving Federal financial assistance." *See* 18 U.S.C. § 844(f)(1); H.R. Rep. No. 91-1549 (1970) ("Section 844(f) . . . is new, and relies for its constitutional base on the power of the federal government to protect its own property.").

The Property Clause does not authorize Congress to extend federal jurisdiction to the destruction of *any* property of an organization receiving only some Federal funding. To reach that conclusion "would give the statute a sweeping scope," as in "the present economy, a wide variety of organizations, both private and non-profit, receive some form of federal financial assistance to

acquire, renovate, or lease specific property." *Hersom*, 588 F.3d at 67. This reading of § 844(f) would "transform a broad swathe of 'traditionally local criminal conduct' into a 'matter for federal enforcement.'" *Id.* (quoting *Jones*, 529 U.S. at 858). Such an expansive interpretation of federal criminal liability would be particularly incongruous in the context of arson, an offense that the Supreme Court characterized as a "paradigmatic common-law state crime." *Jones*, 529 U.S. at 858.

Section 844(f) must be interpreted such that the grave constitutional questions raised by the government's extremely broad statutory reading are avoided. *See id.* at 857 ("[W]here a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter."). The First Circuit's construction in *Hersom* provides an interpretation of § 844(f) that avoids the unconstitutional breadth of the statute while also remaining faithful to Congress's intent in passing § 844(f). In *Hersom*, the Court held that "in the case of organizations receiving federal financial assistance related to specific property, . . . section 844(f) [is] limited in general to arson of *that particular property.*" 588 F.3d at 67.

The legislative history of § 844(f) supports this interpretation. The Senate Report accompanying the Homeland Security Act of 2002, which added the language relevant here, describes its amendment to § 844(f): "This section expands ATF's authority to investigate destruction of property by fire or explosion if *the property* receives federal financial assistance." 148 Cong. Rec. S11394 § 1125 (Nov. 19, 2002) (emphasis added). In other words, the drafters of § 844(f) intended it to only govern destruction of property that the federal government had a direct financial assistance in. Applying this interpretation of § 844(f) here compels the dismissal of count

one because it fails to allege an essential element of the offense — an element necessary to avoid constitutional problems.[1]

To find that the indictment supports charging a § 844(f) offense here would be to stretch federal criminal liability beyond recognition. Under the reading necessary to sustain count one of the indictment, § 844(f) would apply to someone who set fire to a football stadium — or even football jerseys — of a university that receives modest research funding for a particular project from the National Institutes of Health. But such a reading would be an unconstitutional exercise of Congress's Property Clause. Because the indictment here does not support the only interpretation of § 844(f) that avoids this constitutional problem, the Court should dismiss count one.

B. *The indictment cannot support a conviction under Section 844(i) because the NYPD Auxiliary Division vehicle is not used in interstate commerce.*

Count two of the indictment charges Mr. Mattis with arson of property "used in interstate and foreign commerce . . . to wit: a New York City Police Department vehicle." Because the

---

[1] Even looking beyond the indictment, it is clear that the indicted conduct impermissibly extends the reach of § 844(f) beyond the limits of the Property Clause. The minimal Federal financial assistance received by the NYPD was not used in the purchase of the NYPD vehicle. To begin with, in Fiscal Year 2013, over 96 percent of funding from the NYPD's $4.4 billion budget came from New York City, and not Federal, funds. *See* N.Y. City Council, *Schedules A and B to the Fiscal Year 2013 Expense and Contract Budget Resolutions* 25 (reporting over $4.2 billion in "City Funds" and over $99 million in "Other Federal Funds" in the NYPD budget). More specifically, public budget documents reveal that NYPD vehicles purchased in 2013 were allocated from the NYPD's "Capital Commitment Plan." *See* N.Y. Police Dep't, *Hearing on the Fiscal Year 2013 Executive Budget* 9 (2012). In fact, the small amount of Federal financial assistance that the NYPD received in fiscal year 2013 was almost entirely limited to homeland security purchases, and state budget guidelines required that "[**t**]**he purchase of vehicles** [with federal grant money]**. . . is strongly discouraged and applications will not be approved without a very clear and convincing detailed justification. Specifically, the Commissioner of** [the Department of Homeland Security and Emergency Services] **will review and must approve any requests for vehicles.**" *See* N.Y. State Homeland Security Program, *FY 2013 Local Sub-Grantee Program Guidance* 11 (bold in original).

vehicle burned was an NYPD Auxiliary Police vehicle — essentially, a decommissioned NYPD vehicle that is only used by volunteer citizens who cannot make arrests and largely perform neighborhood patrols — the Court should find that the required interstate jurisdictional nexus cannot be found.

The NYPD Auxiliary Police program is a volunteer group of citizens who (absent an enemy attack not pertinent here) are prohibited by state statute from exercising any of the core police powers. Auxiliary police are unpaid volunteers and "are neither police officers nor peace officers," *People v. Luciani*, 466 N.Y.S.2d 638, 641 (Sup. Ct. 1983)," and indeed cannot "be given police officer powers," 1981 N.Y. Op. Att'y Gen. 24, 1981 WL 145797, at *1 (1981). Auxiliary police officers "have no arrest powers beyond that of private citizens," they "carry no firearms," and are "trained basically to observe and report" to professional officers. *Luciani*, 466 N.Y.S.2d at 641. Outside of "period of enemy attack" during which "auxiliary police are recruited for civil defense functions," auxiliary police officers "must be regarded simply as private citizens." 1981 N.Y. Op. , 1981 WL 145797, at *1. The Auxiliary Police division also has a fleet of vehicles used as patrol cars that are transitioned out of regular NYPD service once they acquire a certain number of miles.

As a general matter, the fact that a car (which is capable of traveling in interstate commerce) is the property destroyed is insufficient to support jurisdiction under § 844(i). *See, e.g.*, *United States v. McGuire*, 178 F.3d 203, 210 (3d Cir. 1999) (reversing judgment of conviction on § 844(i) count alleging destruction of a car and rejecting the argument that "consumption of gasoline refined from foreign oil, and wear and tear on vehicle manufactured in another state or country" was sufficient for federal jurisdiction); *see also United States v. Barton*, 647 F.2d 224, 234 (2d Cir. 1981) (expressing skepticism "that § 844(i) would have reached the bombing of [the] car" on the basis that the car "was insured by an interstate insurance carrier").

While the Eleventh Circuit has affirmed that arson of a police patrol vehicle satisfied § 844(i)'s jurisdictional requirement, that case is readily distinguishable because auxiliary police officers do not, and cannot, perform any of the functions that affect interstate commerce. In *Belflower v. United States*, 129 F.3d 1459, 1462 (11th Cir. 1997), an appeal from the denial of a § 2255 motion, the Eleventh Circuit emphasized that the police car there "patrolled traffic on Interstate 16" where the officer "issue[d] traffic citations," "made several drug arrests on the interstate," and "arrested people who lived outside Georgia." *Id.* Auxiliary patrol officers do not, and cannot, do any of those things. Rather, auxiliary officers "perform foot patrol, traffic and crowd control, cover special events," and "report ongoing criminal activity" to the police — just as ordinary civilians do. *Miqui v. City of New York*, No. 01-CV-4628 (FB), 2003 WL 22937690, at *3 (E.D.N.Y. Dec. 5, 2003). Those activities are insufficient to transform the "paradigmatic common-law state crime" of arson, *Jones*, 529 U.S. at 858, into a federal criminal offense.

It is immaterial that the NYPD Auxiliary Division vehicle may have once been "used in interstate commerce." Section 844(i) is triggered by the destruction of property *used* in interstate commerce, not the destruction of property that *had been used* in interstate commerce. *See Mennuti*, 639 F.2d at 113 ("Congress did not choose . . . to make nearly every bombing in the country a federal offense; it limited its reach to property *currently used* in commerce or in an activity affecting it, leaving other cases to enforcement by the states." (emphasis added)). Accordingly, the Second Circuit has explained that § 844(i) only applies to property that is currently used in interstate commerce, or property that is only "temporarily inoperative" but where there is evidence that the property will reenter the "stream of commerce." *United States v. Iodice*, 525 F.3d 179, 184-85 (2d Cir. 2008). Thus, the Court should dismiss count two of the indictment.

C. *The Court must dismiss the Section 844(h) charge because a violation of Section 844(h) cannot be predicated on an arson offense.*

In count three, the government charges Mr. Mattis with the "use of an explosive" to commit a felony in violation of 18 U.S.C. § 844(h). The indictment specifies counts one and two — both arson offenses — as the felonies in which Mr. Mattis used the explosive. But the case law is clear: Neither § 844(f) nor § 844(i) can serve as predicate felonies for § 844(h), and thus count three must be dismissed.

In *LaPorta*, 46 F.3d 152, the Second Circuit held that "[r]eading [§ 844] as a whole . . . suggests that § 844(f) displaces § 844(h)(1) when the underlying offense is destruction of government property." *Id.* at 156. Even though § 844(h) criminalizes the use of "fire or an explosive to commit *any felony*" (emphasis added), the *LaPorta* Court nevertheless held that § 844(h)(1) cannot be predicated on the destruction of government property:

> True, where an act violates more than one criminal statute, the government may usually prosecute under either statute. Here, though, the specific statute — § 844(f) — must logically preempt the general one, for otherwise § 844(f) would be rendered superfluous: § 844(h)(1), when coupled with § 1361 (which proscribes the willful injury of government property), would prohibit willful destruction of government property by fire, covering every circumstance that § 844(f) — malicious destruction of government property by fire — covers. Such a construction would rob § 844(f) of all practical effect, surely not the Congressional intent.

*Id.* The *LaPorta* Court's holding applies with equal or greater force to the use of Section 844(i) as a predicate offense, as the specific § 844(i) statute (arson of property in interstate commerce) "must logically preempt the general one." *Id.* Indeed, the Seventh Circuit rejected the use of § 844(i) as a predicate offense for § 844(h), holding that "the term 'any felony' in section 844(h) means any felony other than arson and conspiracy to commit arson." *United States v. Konopka*, 409 F.3d 837, 839 (7th Cir. 2005) ("[W]hy would Congress want the use of fire to enhance the punishment for using fire?"). As one court in this circuit observed, in "every case in which [§ 844](h)(1) is charged,

fire was the means for destroying property in order to commit a felony *other than the destruction of property*." *United States v. Sicurella*, 834 F. Supp. 621, 625 (W.D.N.Y. 1993) (citing cases in which § 844(h) was charged in cases where fire was used to commit larceny, mail fraud, and to violate civil rights).

Because § 844(h) cannot rest on § 844(i) or § 844(f) as predicate offenses, the Court should dismiss count three of the indictment.

D. *Section 844(f) cannot serve as a predicate offense to trigger Section 924(c) because it is not a crime of violence.*

In count five, the government charges Mr. Mattis with violating § 924(c), a charge that carries a mandatory 30-year prison term, by using a destructive device in furtherance of a crime of violence. *See* 18 U.S.C. § 924(c)(1)(B)(ii). The government identifies "the crime charged in Count One" — the violation of § 844(f) — as the crime of violence. Because the Court should dismiss count one, *see infra*, the Court should also dismiss count five, as it relies on count one as the predicate offense. But even if the Court does not dismiss count one, the Court should still dismiss the 924(c) count because the § 844(f) offense is not "crime of violence." *See, e.g.*, *Cheese*, 2020 WL 705217, at *2 (granting a pre-trial motion to dismiss the § 924(c) count after finding that the predicate offense was not a crime of violence).

There are two separate reasons why § 844(f) cannot trigger § 924(c)'s harsh mandatory minimum. First, the Supreme Court's recent decision in *Borden*, 141 S.Ct. at 1817 conclusively held that a crime that can be committed with a *mens rea* of recklessness cannot qualify as a "violent felony." Section 844(f) can be committed with a *mens rea* of recklessness (as the Department of Justice has repeatedly conceded), and thus *Borden* decisively precludes the application of § 924(c) here. Second, because § 844(f) can be violated by committing physical force against one's own property, it cannot sustain a § 924(c) conviction.

1. Section 844(f) is not a crime of violence because that statute only requires a mens rea of recklessness.

The Supreme Court's recent decision in *Borden*, 141 S. Ct. at 1817, squarely precludes the application of the § 924(c) in this case. In *Borden*, the Supreme Court held that the mandatory minimum provisions of § 924(e) could not be applied because a crime with only a *mens rea* of recklessness could not qualify as a "violent felony" for the purposes of the Armed Career Criminal Act ("ACCA"). *Id*. at 1822. ACCA imposes significant mandatory minimum sentences, in certain cases, for defendants who are convicted of three or more "violent felon[ies]." *Id*. A "violent felony" is defined, in relevant part, as a crime that "has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id*. at 1822. Using the categorical approach — disregarding the facts of the particular case and looking only to the elements of the offense — the Court determined that the offense of conviction, which required only a *mens rea* of recklessness, could not satisfy the definition's requirement that the defendant used or attempted to use force "against the person of another." *Id*. at 1823  The words, "against another," the Court reasoned, involve volitional conduct such that the definition requires the defendant's acts to be "purposeful and knowing." *Id*. at 1826. In other words, the elements of the crime of conviction covered a broader range of conduct than the statutory definition of "violent felony" and, as such, the crime of conviction could not qualify as a "violent felony" for the purposes of applying the ACCA statutory sentencing enhancement.

Section 924(c) — the mandatory minimum count sought here — defines  a "crime of violence" as a felony that "has as an element the use, attempted use, or threatened use of physical

12

force against the person or property of another." 18 U.S.C. § 924(c)(3)(A).[2] This is precisely the same language the Supreme Court analyzed in *Borden*. Thus, for the reasons explained in *Borden*, this enhancement is inapplicable if the predicate offense requires only a *mens rea* of recklessness.

The predicate offense the government claims here is § 844(f), which requires only proof of "malicious" conduct — not knowing or purposeful conduct. Although "maliciously" is the only *mens rea* specified in the statute, "in the context of arson, the requirement of reckless conduct substantially corresponds to the requirement of malicious or willful conduct." *McNaught v. United States*, 646 F. Supp. 2d 372, 380 (S.D.N.Y. 2009) (citing Sand's Modern Federal Jury Instructions for 18 U.S.C. § 844(i), which instruct that the jury must find that the defendant set a fire "with the intent to cause damage, *or that he did so recklessly*"). Therefore, "[l]ooking to common law and the legislative history of § 844, several circuits have held the term includes acts done *intentionally or with willful disregard of the likelihood that damage or injury would result*." *United States v. Wiktor*, 146 F.3d 815, 818 (10th Cir. 1998) (emphasis added) (citing cases from the Third, Fourth, Fifth, Eighth, and Tenth Circuits).

Not surprisingly, then, the Department of Justice has regularly taken the position that the "malicious" *mens rea* in § 844 encompasses reckless conduct. *See, e.g.*, *United States v. Vrancea*, No. 12-CR-198 (WFK) (E.D.N.Y. Dec. 31, 2012), ECF No. 49 at 33 (government's proposed jury instruction defining an act with "malicious intent" as an act "with the intent that damage will result *or with willful disregard of the likelihood that damage will result*" (emphasis added)); *see also United States v. Tsarnaev*, 968 F.3d 24, 101 (1st Cir. 2020) ("[T]he parties agree (or at least do not dispute) that 'maliciously' . . . includes both intentional and reckless acts."); *United States v.*

<hr>

[2]     In *United States v. Davis*, 139 S. Ct. 2319 (2019), the Supreme Court found that § 924(c)'s other definition of crime of violence, the so-called residual clause codified at § 924(c)(3)(B), was unconstitutionally vague.

*Johnson*, 227 F. Supp. 3d 1078, 1088 (N.D. Cal. 2016) ("[T]he government does not dispute that the *mens rea* for arson under § 844(f) can be reckless, and not just intentional, conduct.").

Indeed, in the short time since *Borden* was decided, multiple courts have already held that statutes involving malicious conduct, like the federal arson statute, cannot qualify as a "crime of violence" for purposes of Section 924(c). *See Rudolph v. United States*, No. 20-CV-8024 (CLS), 2021 WL 3212804, at *11 (N.D. Ala. July 29, 2021) ("Because [defendant's] conviction for the predicate § 844(i) arson offense alleged in Count One required proof that he acted "maliciously" — a *mens rea* that "includes both intentional and reckless acts" — it cannot be considered a "crime of violence" under the elements clause of 18 U.S.C. § 924(c)(3)(A)"); *United States v. Sweatt*, No. 05-CR-230 (DKC), 2021 WL 3022695, at *5 (D. Md. July 16, 2021) ("*Borden* has entirely foreclosed this court from finding that . . . an offense [requiring only "malicious" conduct] properly can act as a predicate 'crime of violence' under § 924(c)."). *Borden* compels the same result here as in *Rudolph* and *Sweatt*, and forecloses the government's reliance on § 844(f) as a predicate crime of violence for § 924(c).

> 2. Section 844(f) is not a crime of violence because it can be violated by destroying one's own property.

While *Borden*'s holding alone is sufficient to dismiss count five, there is another basis for dismissal as well: Because an individual can be convicted of § 844(f) for the destruction of their own property, § 844(f) is not an offense that requires the use of "physical force against the person or property of another."

At least one district court has concluded that § 844(f) cannot qualify as a "crime of violence" under § 924(c)(3)(A) because "a defendant can be convicted [under § 844(f)] for targeting their own property." *Bolen v. United States*, --- F. Supp. 3d ---, 2021 WL 1700340, at *2 (D. Idaho Apr. 29, 2021). As an initial matter, the *Bolen* Court explained that the government

conceded that § 844(i) — the statute governing arson of any property used in interstate commerce — is not a crime of violence, because § 844(i) "includes the use of force on one's own property." *Id.*; *see also, e.g.*, *United States v. Salas*, 889 F.3d 681, 684 (10th Cir. 2018) (vacating § 924(c) count because the government conceded that "§ 844(i) arson does not require, as an element, the use of force against the property of 'another'; [because] for example, § 844(i) may apply to a person who destroys his or her own property").

The *Bolen* Court then explained that just like § 844(i), "the plain language of § 844(f) demonstrates that a defendant can be convicted for targeting property their own property."  2021 WL 1700340, at *2.  For instance, if a property owner receives funding through a Department of Housing and Urban Development program, uses that funding to renovate the property, and commits arson against their own property, "they are subject to prosecution under § 844(f)."  *Id.* at *3.  That is because under the text of § 844(f), the property owner destroyed property of an "organization receiving Federal financial assistance."  18 U.S.C. § 844(f).

This means of violating § 844(f) is not conjectural or hypothetical. In *United States v. Koen*, 982 F.2d 1101 (7th Cir. 1992), the Seventh Circuit affirmed the § 844(f) conviction of an individual who set fire to a building that he wholly owned because an organization receiving Federal funds leased property in the building. *Id.* at 1104. In other words, by setting fire to his building, the defendant in *Koen* used force against his *own* property — not the property of another — but was nonetheless convicted of violating § 844(f). Because § 844(f) punishes arson of one's own property, it does not categorically require the use of force against the property of another, as required by § 924(c).

## CONCLUSION

For the foregoing reasons, the Court should dismiss counts one through five of the indictment.

Dated:  September 17, 2021

Respectfully submitted,

 /s/ *Sabrina P. Shroff*
Sabrina P. Shroff
Counsel for Colinford Mattis